IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE JEFFREY V. HOWES | Civil Action No. ELH-16-840

**MEMORANDUM OPINION**

On March 21, 2016, Jeffrey V. Howes, the self-represented Debtor/Appellant, noted an appeal to this Court from two orders issued *sua sponte* by the United States Bankruptcy Court for the District of Maryland (Gordon, J.) in Howes's Chapter 13 bankruptcy case, RAG-12-30614. ECF 1.[1]  In particular, Howes challenges "Interim Order Requiring Debtor to Escrow Funds Pending Final Judgment in Adversary Proceeding" (ECF 1-2, the "Escrow Order"), dated January 8, 2016, and "Order Dismissing Case with Prejudice to Debtor's Refiling for Twenty-Four Months" (ECF 1-1, the "Dismissal Order"), dated March 4, 2016.

In addition, on April 25, 2016, Howes filed "Motion to Vacate or Stay Sua Sponte Order Dismissing Case and Requiring Additional Escrow Payments to Trustee" (ECF 6), with exhibits. A few days later, on May 4, 2016, Howes filed a motion with the same title as ECF 6, which appears to amend ECF 6.  *See* ECF 10 ("Motion to Vacate").  And, on May 13, 2016, Howes filed "Unopposed Motion to Stay Briefing Schedule."  ECF 11 ("Motion to Stay").

This appeal is related to Case ELH-14-2814 and to Case ELH-15-1617.  The 2014 case involved an appeal from the Bankruptcy Court's dismissal of an adversary proceeding filed by Howes and his wife in Howes's underlying Chapter 13 case.  The adversary proceeding has its

---

[1] This case was initially assigned to Judge Bredar and was reassigned to me on May 20, 2016.  *See* docket.

own case number, RAG-13-510, although some pleadings are docketed in both the adversary proceeding and the underlying bankruptcy case.   In ELH-14-2814, this Court affirmed the Bankruptcy Court's dismissal of the adversary proceeding, and that ruling is now on appeal to the Court of Appeals for the Fourth Circuit (Appeal No. 15-2332).[2]

With respect to the case *sub judice*, there are no other litigants.  As a result, the Court has not had the benefit of any opposing viewpoints.  But, by Order of June 6, 2016, I asked the Interim Chapter 13 Trustee to respond to the Motion to Stay.  ECF 12.  In his response (ECF 13), the Interim Chapter 13 Trustee explained that he is not a party to the appeal; he had not requested the two orders that are the subject of the appeal; and he has no interest in the outcome of the appeal.  *Id*. at 8-10.  Nevertheless, the Interim Chapter 13 Trustee provided a helpful analysis of the issues raised in the Motion to Stay.  *Id*. at 10-13.

By Order of July 21, 2016, I directed Howes to submit a brief in support of his appeal, due no later than August 26, 2016.  ECF 14.  Moreover, I noted that, in effect, the Motion to Vacate and the Motion to Stay ask the Court to address the appeal on the merits.  *Id*.

Then, on August 19, 2016, Howes filed his "Unopposed Motion to Stay or Extend Briefing Schedule Pending Circuit Court Ruling Authorizing Direct Appeal."  ECF 15.  That motion asked this Court either to stay the briefing in this case until after the Fourth Circuit's decision as to the appeal of the adversary proceeding or, in the alternative, to grant a thirty-day extension to file the brief.  *Id*.  By Order of August 23, 2016, I denied Howes's motion to stay the briefing schedule, but I granted the request for extension.  ECF 17.  Howes then filed his brief on September 6, 2016.  ECF 18.

---

[2] The appeal was argued in the Fourth Circuit on December 6, 2016.

Also on September 6, 2016, Howes filed "Debtor's Motion for Stay Pending Appeal and Incorporated Memorandum."   ECF 19.   In that motion, Howes asked the Court to stay the Escrow Order and the Dismissal Order pending the outcome of this appeal.   *Id.*   I denied the motion by Memorandum and Order of September 15, 2016, stating that such a request must first be made in the Bankruptcy Court.   ECF 20; ECF 21.

In sum, this Memorandum Opinion resolves Howes's appeal of the Bankruptcy Court's Escrow Order (ECF 1-2) and Dismissal Order (ECF 1-1); his Motion to Vacate (ECF 10); and his Motion to Stay (ECF 11).

No hearing is necessary to resolve the pending motions.   *See* Local Rule 105.6.[3]   For the reasons that follow, I shall affirm the two orders of the bankruptcy court.   The Motion to Vacate (ECF 10) essentially duplicates the substance of the appeal.   Therefore, I shall deny it as moot. Moreover, I shall deny the Motion to Stay (ECF 11) as moot.

## I.      Factual Background and Procedural History

I incorporate the factual and procedural history set forth in my Memorandum Opinion with respect to Howes's appeal concerning the disposition of his adversary proceeding.   ECF 30 in ELH-14-2814.[4]   I repeat and amplify facts to the extent that they are relevant and provide context for my analysis.

---

[3] The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

[4] Although Mr. Howes has provided an appendix to his appeal (ECF 2), the appendix is incomplete and does not contain facts sufficient to provide an adequate history of the case.   I have used the record provided by Mr. Howes to the extent possible.   But, in order to provide sufficient background as to the case, I have also utilized the record from the underlying bankruptcy case (RAG-12-30614) and the related adversary proceeding (RAG-13-510).

(continued . . .)

According to Howes, on November 30, 2001, Howes and his wife, Tonya Howes, executed a "Construction Note" ("Note") payable to The Columbia Bank, in the amount of $696,130.  ECF 1 in RAG-13-510 (Adversary Complaint or "A.P. Complaint"), ¶ 15; ECF 1-1 in RAG-13-510 (Note).  They also executed a deed of trust, conveying their interest in the real property to Trustee for The Columbia Bank, to secure the repayment of the Note.  ECF 1 ¶ 15 in RAG-13-510.  The property that is the subject of the deed of trust is located in Howard County, Maryland, and serves as the principal residence of the Howes.  *Id*. ¶ 16.

The Note was amended by a Loan Modification Agreement dated April 16, 2003.  *See* ECF 1-15 in ELH-14-2814.  The Loan Modification Agreement, which reflects a loan balance of $650,000, provided that the Howes were to make a monthly mortgage payment of $3,793.22, reflecting both principal and interest.  *Id*.

According to Mr. Howes, the Howes "suffered a decline in their income in 2008 . . . , with insufficient income to cover the Note payments, so they used their savings to bridge the gap until their savings were exhausted."  ECF 1 ¶ 17 in RAG-13-510.  They "defaulted on the Note on April 2, 2009, and then fell more than 60 days behind in June 2009."  *Id*.  Thereafter, the

---

(. . . continued)
    "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Of import here, in *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990), the Court recognized that a district court may "properly take judicial notice of its own records."

Howes made several partial mortgage payments in June, July, and August of 2009, but ultimately stopped when they "discovered that they were receiving no benefit from their payment . . . ." *Id.* Mr. Howes stated that this was because Wells Fargo was "holding their partial payments in suspense and not applying them to their account . . . ." *Id.* Howes claimed that from July 2009 through September 2012, the Howes made extensive efforts to modify the terms of their mortgage loan to make it "more affordable." *See id.* ¶¶ 18-34.

In the meantime, US Bank, "as principal," and Wells Fargo, as "agent" of US Bank, "caused" a foreclosure case "to be filed against the Howes," in the Circuit Court for Howard County ("First Foreclosure Case"). *Id.* ¶ 36. According to Howes, the First Foreclosure Case was voluntarily dismissed by the plaintiffs on January 3, 2011, due to "defective" affidavits. *Id.* ¶¶ 36, 40.

Howes claimed that on February 21, 2012, US Bank, as "principal," and Wells Fargo, as its "agent . . . caused" the filing of another foreclosure case (the "Second Foreclosure Case") against the Howes, also in the Circuit Court for Howard County. *Id.* ¶ 36. According to the Howes, when the Second Foreclosure Case was filed, neither US Bank nor Wells Fargo had the right to enforce the Note. *Id.* ¶ 41. This is because, at some point, the Howes's Note was pooled with several other notes in a residential mortgage-backed securitization trust, which was terminated in January 2012. As a result, he alleged that it was not clear who had the right to enforce the Note. *Id.* ¶¶ 42-43. The Second Foreclosure Case was stayed because, on November 15, 2012, Howes, through counsel, filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code. *Id.* ¶ 49; *see* ECF 1 in RAG-12-30614 (Chapter 13 Petition).

Howes, as Debtor, filed his proposed Chapter 13 Plan on December 13, 2012.  ECF 13 in RAG-12-30614 ("First Plan").  According to the First Plan, at the time that Mr. Howes filed his bankruptcy case, he had outstanding arrears on his mortgage of $35,662.  ECF 13 at 1 in RAG-12-30614.[5]  The First Plan proposed thirty-five monthly payments of $1,018.98 each by Howes, directly to Wells Fargo Home Mortgage, "as servicer."  *Id.*

Wells Fargo filed an "Objection to Confirmation of Plan" on January 9, 2013.  ECF 25 in RAG-12-30614.  Wells Fargo, identifying itself as "Servicer for US Bank National Association, as Trustee," stated, *id.*: "The plan does not provide for full payments of the arrearages.  The plan provides for $35,662.00, which is less than the amount of the full arrears.  The arrears are approximately $200,196.79."

Thereafter, US Bank, which claimed to be the trustee for the then-current holder of the Howes's mortgage debt, filed a proof of claim contending that the outstanding arrears were actually $200,196.79.  Claim 4-1 at 1 in RAG-12-30614.  Wells Fargo then filed an amended claim on March 15, 2013, which identified Wells Fargo as the creditor, rather than US Bank.  *See* Claim 4-2 at 1 in RAG-12-30614 ("Claim Four").

On April 2, 2013, Howes filed "Debtor's Objection to Allowance of Claim Filed by Wells Fargo Bank N.A."  ECF 36 in RAG-12-30614.  In the objection, Howes claimed that Well Fargo lacked "standing" to file the claim and that the claim failed "to contain a credit for the trial modification payments Debtor made."  *Id.* at 2.

The Bankruptcy Court held a hearing on June 17, 2013, with respect to Howes's objection to Claim Four.  ECF 62 in RAG-12-30614.  Ultimately, it denied relief because Howes

---

[5] It appears from the "Schedules" that when Howes filed his bankruptcy case, he had only $27,920.70 of other debts, $22,258 of which was a single disputed medical bill.  *See* ECF 14 in RAG-12-30614.

failed to serve the assignees. ECF 65 in RAG-12-30614. According to Howes, the Bankruptcy Court noted that Howes could "initiat[e] an adversary proceeding incorporating the claim objection to determine the party entitled to enforce the Note." ECF 1 ¶ 58 in RAG-13-510.

Through counsel, Howes and his wife filed a nine-count adversary proceeding on September 3, 2013. ECF 1 in RAG-13-510.[6] They sued Wells Fargo Bank N.A.; US Bank N.A.; Carrington Mortgage Services, LLC ("Carrington"); Christiana Trust, a Division of Wilmington Savings Fund Society, FSB ("Christiana"); and ten other "unknown" defendants. *Id.* ¶¶ 9-13. Plaintiff asserted: "None of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law." *Id.* ¶ 85.

The adversary proceeding also included, *inter alia*, a claim against Wells Fargo and US Bank alleging "fraud upon the court." *Id.* ¶¶ 64-73 ("Count One"). The A.P. Complaint stated: "Wells Fargo and US Bank filed the Claim on behalf of the Trust with the intent to defraud this Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012." *Id.* ¶ 65.

In October 2013, defendants Carrington and Christiana filed a motion to dismiss for failure to state a claim (ECF 5 in RAG-13-510), which they subsequently amended. *Id.*, ECF 16. Also in October 2013, Wells Fargo and US Bank moved to dismiss the adversary proceeding for failure to state a claim. ECF 8 in RAG-13-510. On January 6, 2014, the Bankruptcy Court held a hearing on the defendants' motions. ECF 18 in RAG-13-510. The Bankruptcy Court requested supplemental briefing to address the allegations that the Trust had no legal right to enforce the Note. ECF 46 at 26-27 in RAG-13-510 (Transcript of 1/6/14 Hearing). At the end

---

[6] Although Tonya Howes is not a party to the underlying bankruptcy case, she is a plaintiff in the adversary proceeding. *See* ECF 1 in RAG-13-510.

of the hearing, Judge Gordon stated that he wanted to "take a close look at the legal authorities," and continued the hearing. *Id*. at 24.

Wells Fargo and US Bank submitted a supplemental brief on January 21, 2014. ECF 21 in RAG-13-510. The Howes responded on February 5, 2014. ECF 22 in RAG-13-510.

The Bankruptcy Court held another hearing on the motions to dismiss on March 4, 2014. ECF 23 in RAG-13-510. At that hearing, the Bankruptcy Court granted the motions to dismiss, dismissing Count I of the A.P. Complaint with prejudice and the remaining counts without prejudice. ECF 28 at 2-3 in RAG-13-510. Thereafter, the Howes filed a motion to reconsider with the Bankruptcy Court on May 27, 2014 (ECF 34 in RAG-13-510), which the Bankruptcy Court denied on July 22, 2014. ECF 36 in RAG-13-510.

On September 4, 2014, Howes noted an appeal to this Court, challenging the Bankruptcy Court's decision on the motions to dismiss and the motion to reconsider. ECF 1 in ELH-14-2814. On November 5, 2014, while the briefing in this Court was ongoing, the Bankruptcy Court issued a "Memorandum Opinion in Support of Order Dismissing Complaint and Denying Motions to Reconsider," which elaborated on its prior oral rulings. ECF 51 in RAG-13-510.

In a Memorandum Opinion and Order issued on September 30, 2015, I affirmed the Bankruptcy Court's dismissal of the adversary proceeding and its denial of the motion for reconsideration. ECF 30 and ECF 31 in ELH-14-2814. Thereafter, on October 27, 2015, Howes noted an appeal to the Fourth Circuit. ECF 32 in ELH-14-2814. That appeal is currently pending; oral argument was held on December 6, 2016 (Appeal No. 15-2332).

On September 12, 2014, while the matter of the adversary proceeding was pending in this Court, the Bankruptcy Court issued an Order scheduling a confirmation hearing for Debtor's Chapter 13 Plan, to be held on December 17, 2014. ECF 127 in RAG-12-30614. Howes

attempted to have the Bankruptcy Court stay the main bankruptcy case during the pendency of the appeal as to the adversary proceeding.  ECF 140 in RAG-12-30614.  But, on December 9, 2014, the Bankruptcy Court denied his request.  ECF 142 in RAG-12-30614.  On December 15, 2014, in ELH-14-2814, Howes filed an "Emergency Motion to Stay Plan Confirmation Pending Appeal" ("Emergency Motion to Stay").  *See* ECF 18-1 at 80 in ELH-16-840; ECF 23 in ELH-14-2814.

According to the Emergency Motion to Stay, ECF 18-1 at 80: "The bankruptcy court scheduled a December 17, 2014 hearing on confirmation of Mr. Howes' chapter 13 plan (the 'Plan Confirmation Hearing'). Since the hearing on plan confirmation may result in bankruptcy case dismissal, Appellants seek an order from this Court" staying the case, pending appeal.[7]

Counsel for the Chapter 13 Trustee opposed the Emergency Motion to Stay, arguing that "any stay should be conditioned upon" "appropriate security."  ECF 18-1 at 73 in ELH-16-840. Christiana, Carrington, Wells Fargo, and US Bank each responded as well.  ECF 25 in ELH-14-2814 (Christiana and Carrington); ECF 26 in ELH-14-2814 (US Bank and Wells Fargo).  By Order of December 16, 2016, I granted the Emergency Motion to Stay, "subject to the posting of a bond by appellants within 24 hours of the docketing of this Order, in the bond amount of $100,000."  ECF 29 in ELH-14-2814.  Further, I said, *id.* at 3: "In the event that the bond (or other adequate security agreed to by the Trustee and/or the bankruptcy court), is not timely posted, the bankruptcy court may promptly reschedule the hearing with respect to confirmation of the plan."

On December 17, 2014, Howes entered into a consent agreement (the "Agreement") with the U.S. Trustee, "in lieu of posting the security bond."  ECF 10 at 5 (Motion to Vacate).  Howes

---

[7] It is evident that there are several pages missing from Mr. Howes's submission.  *See* ECF 18-1 at 80-83.

states that the terms of the Agreement required him to increase his monthly plan payments from $321 to $5,980, satisfying the Court's security requirement, pending resolution of the appeal.  *Id*. Howes then filed an amended Chapter 13 Plan on December 23, 2014, reflecting the Agreement. ECF 148 at 1 in RAG-12-30614.

However, on March 9, 2015, the Bankruptcy Court ordered several modifications to the Agreement, "to better fit the circumstances of this case."  ECF 153 at 2 in RAG-12-30614.  In particular, the Bankruptcy Court reduced to five days the time for the Debtor to cure any deficiencies in payment, running from the date of notice.  *Id*. at 3.  The Bankruptcy Court also provided that the Debtor's failure to cure a default within five days, or to make timely payment more than twice, would result in the dismissal of the bankruptcy case, with prejudice, for twenty-four months.  *Id*.  Finally, the Bankruptcy Court ordered that a confirmation hearing "shall be held within thirty (30) days of the entry by the District Court of a final order resolving the appeal."  *Id*.

The Bankruptcy Court also provided its rationale for its modifications to the Agreement. It said, *id*. at 1: "Before this case was commenced on November 15, 2012, the Debtor, by his own admission, managed to avoid paying his home mortgage debt for almost a decade. Now, for the past two years, the case has been mired in the status quo with the Debtor continuing to sidestep his mortgage payment obligations."  After discussing the history of the adversary proceeding and the appeal, the Bankruptcy Court also said, *id*. at 2: "In a word, the Court believes the AP is by and large frivolous."

Howes filed a motion for reconsideration on March 23, 2015, asking the Bankruptcy Court to reverse its order modifying the consent agreement.  ECF 156 in RAG-12-30614.  The Bankruptcy Court denied the motion for reconsideration on May 14, 2015.  ECF 161 in RAG-12-

30614.  Howes then noted an appeal to this Court from the Bankruptcy Court's order modifying the terms of the Agreement and from its denial of his motion for reconsideration.  ECF 1 in ELH-15-1617.  By Memorandum and Order of December 8, 2015, I dismissed that appeal as moot, given my resolution of the appeal as to the adversary proceeding.  ECF 13; ECF 14 in ELH-15-1617.  Howes took no further action with respect to that matter.  *See* docket.

By Order of September 30, 2015, the stay of the underlying bankruptcy case was lifted. ECF 31 in ELH-14-2814.  The Bankruptcy Court held a confirmation hearing on November 18, 2015, with respect to Howes's Amended Chapter 13 Plan.  ECF 185, ECF 188 in RAG-12-30614.  According to the Bankruptcy Court, "Debtor asserted at the hearing that he had made all but 31 of the postpetition mortgage payments that had come due."  ECF 1-2 at 5 n.7 in ELH-16-840.  At that hearing, the Bankruptcy Court indicated, *id.* 1-2 at 5, that it would

> likely enter an order that required the Debtor to (a) continue to make the $5,980 monthly plan escrow payments to the Trustee (b) deposit into an escrow account a sum sufficient ($150,970) to secure thirty-one (31) months of unpaid postpetition mortgage payments[] and (c) continue to deposit additional, "current" monthly postpetition mortgage payments of $4,870 into the same postpetition escrow account.

None of the parties in the Chapter 13 case had asked the Bankruptcy Court to issue the proposed order.  *Id.* at 6-7.  But, the Bankruptcy Court gave Howes ten days to respond to its proposal.  *Id.* at 5 n. 7.

Howes responded on November 30, 2015, in opposition to the Bankruptcy Court's proposal.  ECF 191 in RAG-12-30614.  He made three primary arguments, (1) the pending case in the Fourth Circuit deprived the Bankruptcy Court of jurisdiction; (2) no party had requested the relief proposed by the Bankruptcy Court; and (3) such an order would be inconsistent with a stay order previously entered by the Bankruptcy Court in the Chapter 13 case.  *Id.* at 2; *see also* ECF 153 in RAG-12-30614.

On January 8, 2016, the Bankruptcy Court issued the Escrow Order.  ECF 1-2 in ELH-16-840.  It provided, *inter alia*, *id*. at 7:

> ORDERED, that the Debtor shall continue to make monthly plan payments in the amount of $5,980 to the Trustee; and it is further
>
> ORDERED, that within ten (10) days of entry of this Order the Debtor shall also deposit with the Trustee, to be held in escrow, $155,840 representing 32 months of delinquent unpaid postpetition mortgage payments; and it is further
>
> ORDERED, that the Debtor shall, commencing on February 15, 2016 and on each successive fifteenth (15th) day of each month thereafter, deposit an additional $4,870 representing current postpetition mortgage payments into such escrow account. . . .

In the Order, the Bankruptcy Court also recounted the history of the case.  Judge Gordon said, ECF 1-2 at 2:

> [N]one of the seven Chapter 13 Plans filed by the Debtor have been confirmed. This is so in large part because the Debtor has chosen to prosecute an Adversary Proceeding (AP) (Case No. 13-00510) against lender-assignees (Defendants) who either assert, or asserted, a secured lien position in the Debtor's residential real estate, co-owned with his non-filing spouse.  This Court has so far determined that the essence of the AP – that one or more of the Defendants committed fraud – is patently frivolous. When that determination is combined with the tortured history of this case and the AP, it is hard to escape the notion that the AP was likely filed to garner bargaining power over the Defendants to offset the Debtor's substantial, years-long mortgage default and arrears.

Further, the Bankruptcy Court stated, *id.*:

> [T]he pendency of the AP has been used by the Debtor to largely evade fundamental responsibilities that any other debtor would have to live up to in order to sustain a Chapter 13 case, continue to enjoy the vast benefits of the automatic stay and achieve confirmation. Those responsibilities include making: (a) regular plan payments to the Trustee that are, at a minimum, sufficient to cure, within five years, the prepetition arrears owed on the Debtor's residential home mortgage and (b) ongoing, current postpetition payments to the lender who holds the home mortgage loan.[1]

The Bankruptcy Court also addressed the relationship of its Order to the appeal of the adversary proceeding pending before the Fourth Circuit.  *Id*. at 6.  It stated, *id*.:

[W]hile the Circuit Court has jurisdiction over the appeal of the District Court's Memorandum Opinion and Order (the AP) it does not have jurisdiction over either this main case or plan confirmation issues. The provisions of this Order will not interfere with any of the rulings made by the District Court or the Circuit Court's ability to decide the appeal. Nor will this Order resolve any of the issues raised in the AP. It will merely require the Debtor to behave in a manner consistent with the minimum standards of what any other debtor would be required to do in a Chapter 13 case. This is especially warranted here where the Debtor has managed to flaunt the fundamental precepts of Chapter 13 for over three years.

Notably, the Bankruptcy Court said, *id*. at 6-7:

The Debtor has so far used the paper-thin strength of the AP, a refusal to go to trial, motions for reconsideration and the appeals process to secure a free ride. Those days must end. As explained in the Opinion Dismissing, this Court has concluded that the Debtor's conduct in this regard is abusive. . . . And that is why it has been determined that this Order must be issued *sua sponte* to protect the creditors' interest and, moreover, the integrity of the system. The express language of 11 U.S.C. § 105(a) demands no less.

Thereafter, on January 29, 2016, the Chapter 13 Trustee filed a line, ECF 203 in RAG-12-30614, "stating that [] she has not received the monthly plan payment in the amount of $5,980.00 that was due on January 15, 2016. Further, pursuant to the Interim Order Requiring Debtor to Escrow Funds Pending Final Judgment in Adversary Proceeding, as of the filing of this Line, the Trustee has not received from the Debtor the $155,840.00."

The Chapter 13 Trustee filed another line on February 3, 2016, indicating that she received the $5,980.00 monthly payment, but had yet to receive the $155,840 lump sum payment. ECF 204 in RAG-12-30614. On February 18, 2016, the Interim Chapter 13 Trustee[8] filed a line notifying the Bankruptcy Court that he had "not received the monthly plan payment in the amount of $5,980.00 that was due on February 15, 2016. Further, pursuant to the Interim

---

[8] On February 8, 2016, Chapter 13 Trustee Ellen Cosby resigned from the case. Gerard Vetter was appointed as Interim Chapter 13 Trustee. ECF 205 in RAG-12-30614. Mr. Vetter resigned as the Interim Chapter 13 Trustee on October 1, 2016. ECF 237 in RAG-12-30614. Robert S. Thomas II was appointed as "Standing Trustee" at that time. *Id.*

Order Requiring Debtor to Escrow Funds Pending Final Judgment in Adversary Proceeding, as of the filing of this Line, the Trustee has not received from the Debtor the $155,840.00." *Id.*, ECF 207.

The Interim Chapter 13 Trustee then submitted to the Bankruptcy Court "Trustee's Affidavit Regarding Material Default," dated March 2, 2016. ECF 210 in RAG-12-30614. In his Affidavit, the Interim Chapter 13 Trustee confirmed that the Interim Trustee had not received the $155,840 payment from the Debtor; that the Debtor had failed to make the $4,870 payment that was due on February 15, 2016; and that Debtor had failed to provide copies of his 2013 and 2014 income tax returns to the Interim Trustee, all of which were required by the Escrow Order. ECF 210 in RAG-12-30614. However, the Interim Trustee noted that Debtor was current on his monthly payments due to the Trustee in the amount of $5,980. *Id.*

On March 4, 2016, the Bankruptcy Court issued the Dismissal Order. ECF 1-1. Citing the three Lines filed by the Chapter 13 Trustee and the Interim Chapter 13 Trustee, as well as the Interim Chapter 13 Trustee's Affidavit, averring that the Debtor was in default and did not cure the default, the Bankruptcy Court ordered the case "dismissed with prejudice to the Debtor's refiling for twenty-four (24) months from the date of entry of this Order." *Id.* at 2. In addition, the Bankruptcy Court terminated the automatic stay. *Id.* This appeal followed.

## II.     Discussion

### A.     Standards of Review

As noted, Howes has appealed, *inter alia*, from two orders entered by the Bankruptcy Court: (1) the Escrow Order (ECF 1-2) and (2) the Dismissal Order (ECF 1-1).

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C.

§ 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."); *see also Conrad v. Schlossberg*, 555 B.R. 514, 515–16 (D. Md. 2016) (citing 28 U.S.C. § 158(c)(2)); *Craddock Washabaugh v. Miller*, No. 1:16CV694, 2016 WL 4574690, at *1 (M.D.N.C. Sept. 1, 2016) (same); *Engell v. Sheetz*, No. 2:16-CV-00005-BR, 2016 WL 3579011, at *1 (E.D.N.C. June 24, 2016) (same).   "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia*, the district court's power to remand with instructions for further proceedings).

The district court reviews the bankruptcy court's findings of fact under the "clear error" standard. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013).   A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see, e.g.*, *Andrews v. America's Living Centers, LLC*, 827 F.3d 306, 312 (4th Cir. 2016); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012).   The bankruptcy court's conclusions of law are subject to *de novo* review.   *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).   And, where a bankruptcy court uses its equitable authority, the district court reviews such decisions for abuse of discretion.   *See e.g.*, *Moushigian v. Marderosian*, 764 F.3d 123, 128 (1st Cir. 2014); *Adelphia Bus. Solutions., Inc. v. Abnos*, 482 F.3d 602, 607 (2d Cir. 2007); *In re Massenburg*, 554 B.R. 769, 773 (D. Md. 2016); *Locks v. U.S. Tr.*, 157 B.R. 89, 92 (W.D. Pa.

1993) ("Abuse of discretion is also the standard for reviewing equitable, *sua sponte* decisions of the bankruptcy court."); *In re Prosser*, 469 B.R. 228, 231 (D.V.I. 2012); *In re Greenwich Sentry, L.P.*, 484 B.R. 567, 571-72 (S.D.N.Y. 2012), *aff'd*, 534 F. App'x 77 (2d Cir. 2013).

Bankruptcy courts exercise equitable authority when acting pursuant to 11 U.S.C. § 105(a). Section 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

As explained in COLLIER ON BANKRUPTCY (16th ed.) ("Collier"), "Section 105 gives the bankruptcy court the power to fill in gaps and further the statutory mandates of Congress in an efficient manner." 2-105 Collier ¶ 105.01. Collier also states, *id.*: "The equitable origins of the bankruptcy power suggest substantial leeway to tailor solutions to meet the diverse problems facing bankruptcy courts." Thus, a bankruptcy court's decision to order relief, pursuant to the authority granted to it under § 105(a), is reviewed for abuse of discretion. *See, e.g.*, *In re Robinette*, 338 F. App'x 610, 612 (9th Cir. 2009); *Dep't of Treasury of Com. of P.R. v. Galarza Pagan*, 279 B.R. 43, 46 (D.P.R. 2002) (citing *Indian Motocycle Assoc. v. Mass. Hous. Fin. Agency*, 66 F.3d 1246, 1249 (1st Cir.1995)); *see also In re Clark*, 208 F.3d 208 at *1 (4th Cir. 2000) (table) (indicating that bankruptcy courts' decisions under § 105(a) are reviewed for abuse of discretion).

The Court of Appeals for the Fourth Circuit has said: "A district court abuses its discretion when it (1) acts 'arbitrarily, as if neither by rule nor discretion,' (2) fails to 'adequately . . . take into account judicially recognized factors constraining its exercise' of discretion, or (3) rests its decision on 'erroneous factual or legal premises.'" *United States v. Alvarado*, 840 F.3d

184, 188-89 (4th Cir. 2016) (quoting *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)).  As

noted, the same standard applies to the Bankruptcy Court.  *See* 28 U.S.C. § 158(c)(2).

## B.       Exclusive Appellate Jurisdiction

Howes maintains that the Bankruptcy Court lacked jurisdiction to issue either the Escrow

Order or the Dismissal Order because of the pendency of the appeal in the Fourth Circuit

concerning the adversary proceeding.  *See* ECF 18 at 16-22.  He contends that "both the Fourth

Circuit appeal and the propriety of the Escrow Order and the Dismissal Order turn on the same

issue of the alleged lender's conduct pertaining to Claim 4 proof of claim and supporting

documents," and thus "the underlying dismissal is inextricably intertwined with the Fourth

Circuit appeal."  *Id.* at 18.

According to Howes, the doctrine of exclusive appellate jurisdiction is applicable in this

case based on the relationship between the adversary proceeding and the contested orders.  ECF

18 at 18-20.  He asserts, *id.* at 21-22:

> The bankruptcy court's Orders not only depend on unresolved matters in the
> Fourth Circuit's exclusive jurisdiction as discussed above, but, if allowed, may
> also impact the same matters, possibly empowering the lower court to effectively
> moot appeals of it's [sic] own orders, thus circumventing Appellant's
> constitutional right to review, and potentially wasting over three years of time and
> resources in litigation of the parties by returning them to their pre-litigation status
> without having adjudicated the matters in dispute.

Howes concludes, *id.* at 22: "Such empowerment of one court to eschew the multi-tiered

appellate infrastructure also thwarts the Article III court's ability to create binding precedent."

I shall review *de novo* the determination of the Bankruptcy Court that it had jurisdiction

to issue both orders.

As noted, the Interim Chapter 13 Trustee is not a party to this appeal.  Nevertheless, at

the Court's request, he filed a "Response to Appellant's Unopposed Motion to Stay Briefing

Schedule." ECF 13.  According to the Interim Chapter 13 Trustee: "The issue currently on appeal before the Fourth Circuit–the dismissal of Mr. and Mrs. Howes's adversary proceeding–is not sufficiently related to the Escrow Order or the Dismissal Order to divest this Court of jurisdiction over those orders." *Id.* at 12.  Moreover, the Interim Chapter 13 Trustee posited that, "'when a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal.'" *Id.* at 11 (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 580 n.2 (5th Cir. 2002)).

As the Interim Chapter 13 Trustee observed, "the duty to make mortgage payments is not at issue in the adversary proceeding and its pending appeal." ECF 13 at 12.  Rather, the "adversary proceeding addresses only the identity of the recipient of those payments." *Id.*  The Interim Chapter 13 Trustee notes, *id.* at 12-13:

> The Escrow Order does not require Mr. Howes to make mortgage payments to any particular person and certainly not to any defendant in the adversary proceeding. It simply requires him to escrow those payments – an order doing no more than requiring the closest performance possible of Mr. Howes's obligation to make mortgage payments under 11 U.S.C. § 1326(a) in this situation.

Notably, in the Escrow Order, Judge Gordon stated: "The provisions of this Order will not interfere with any of the rulings made by the District Court or the Circuit Court's ability to decide the appeal. Nor will this Order resolve any of the issues raised in the AP." ECF 1-2 at 6.  Moreover, the Bankruptcy Court said, *id.*: "No stay has been requested in, or entered by, the Circuit Court . . . ."

In my view, the appeal pending in the Fourth Circuit with respect to the adversary proceeding did not deprive the Bankruptcy Court of jurisdiction to issue either the Escrow Order or the Dismissal Order.  Generally, the filing of a notice of appeal divests a bankruptcy court of its "control over those aspects of the case involved in the appeal." *Griggs v. Provident*

*Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also, e.g.*, *In re Startec Glob. Commc'ns Corp.*, 303 B.R. 605, 607 (D. Md. 2004) ("Generally, when an appeal is taken from a final judgment in a federal civil case, jurisdiction over the case is transferred to the appellate court and the trial court loses jurisdiction."). However, "[i]n bankruptcy, discrete controversies within the overall case framework may often deserve separate appellate consideration." *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011). As the Court of Appeals for the Fifth Circuit said in *Transtexas Gas Corp.*, *supra,* 303 F.3d at 580 n.2, "when a notice of appeal has been filed in a bankruptcy case, the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal." *See also In re Ponton*, 446 Fed. App'x 427, 429 (3d Cir. 2011). A bankruptcy court "may even continue to address matters indirectly implicated in the appeal." *In re Scopac*, 624 F.3d at 280.

The *Scopac* Court "point[ed] toward a functional test." 624 F.3d at 280. It said that "'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'" *Id.* (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 759 (1st Cir. BAP 2007)).

Applying that test here, it is apparent that the pendency of the appeal with regard to the adversary proceeding did not divest the Bankruptcy Court of jurisdiction to issue the Escrow Order and the Dismissal Order in the underlying Chapter 13 case. The Debtor's adversary proceeding, in relevant part, pertains to claims of fraud and issues as to the entity entitled to the mortgage payments. *See* ECF 1 in RAG-13-510. The Escrow Order, however, mandated that the Debtor make payments to the Interim Chapter 13 Trustee during the pendency of the appeal

as to the adversary proceeding.   ECF 1-2 at 7.   Accordingly, the Escrow Order and the subsequent Dismissal Order did not involve issues of the kind that would "interfere with or effectively circumvent the appeal process." *Scopac*, 624 F.3d at 280.

Moreover, as of this juncture, the dismissal of the underlying bankruptcy case has not resulted in the dismissal of the appeal of the adversary proceeding, nor is that likely to occur, based on guidance from other cases.  *See, e.g.*, *In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995) ("[W]e hold that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement."); *In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992) ("We hold, in accord with the Third and Eleventh Circuits, that bankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed."); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir. 1992); *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989).

In sum, I am satisfied that the Bankruptcy Court did not err in concluding that it had jurisdiction to issue the Escrow Order and the Dismissal Order.

## C.   Escrow Order and Dismissal Order

I turn to Howes's contention that the Bankruptcy Court misapplied  11 U.S.C. § 1322 and 11 U.S.C. § 1326 of the Bankruptcy Code (the "Code") in issuing the Escrow Order and the Dismissal Order.  ECF 18 at 7.

The Bankruptcy Court expressly stated that it issued the Escrow Order pursuant to its equitable powers under § 105(a) of the Code.  ECF 1-2 at 7.   Therefore, I shall review the Bankruptcy Court's Escrow Order and the Dismissal Order for abuse of discretion and error. ECF 1-2 at 7; *see* ECF 1-1; 11 U.S.C. § 105(a).

### 1.      Chapter 13 Overview

Debtor brought his original action in the Bankruptcy Court under Chapter 13 of the Code. "Chapter 13 was designed to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income." 8-1322 Collier at ¶ 1322.01.   Unlike Chapter 7 of the Bankruptcy Code, which involves the liquidation of a debtor's assets, "a Chapter 13 bankruptcy allows the debtor to keep his assets." *In re Murphy*, 474 F.3d 143, 147-48 (4th Cir. 2007).

"To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard v. Blue Hills Bank*, ___ U.S. ___, 135 S. Ct. 1686, 1690 (2015); *see also e.g.*, *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) ("Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income."); *In re Dubois*, 834 F.3d 522, 526 (4th Cir. 2016) (explaining that payments under a Chapter 13 plan are made out of future income); *Carroll v. Logan*, 735 F.3d 147, 149 (4th Cir. 2013) (under Chapter 13, "debtors with regular income pay back a portion of their debts through a repayment plan").   "If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan." *Bullard*, 135 S. Ct. at 1690.

Here, Howes argues that the Bankruptcy Court misapplied §§ 1322 and 1326 of the Code. Section 1322 of the Bankruptcy Code describes the "Plan" that a debtor must file with the Bankruptcy Court.   *See* 8-1322 Collier ¶ 1322.01.   "Sections 1322(a) and (b) set forth the mandatory and permissive provisions of a Chapter 13 plan." *In re Murphy*, 474 F.3d at 152; *see also In re Nosek*, 544 F.3d 34, 44 (1st Cir. 2008) (noting that provisions under § 1322(a) are mandatory while the provisions under § 1322(b) are permissive).

Section 1322(b) is of particular importance in this case.  According to § 1322(b)(2), the debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."  Section 1322(b)(5) is concerned with "relatively long-term debt, such as a . . . mortgage debt on the residence of the debtor."  8-1322 Collier ¶ 1322.09.  Section 1322(b)(5) provides that the plan may, "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . ."

Given the interplay of §§ 1322(b)(2) and 1322(b)(5), where the term of the mortgage goes beyond the three to five year length of the plan, "the only reasonable alternative for saving a Chapter 13 debtor's home is to 'provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending,' consistent with § 1322(b)(5) of the Code."  KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY, § 129.1 at ¶ 4 (4th ed.), www.Ch13online.com ("Lundin & Brown").  In sum, these two sections permit "the Chapter 13 plan to cure defaults within a reasonable time and maintain payments during the case" but do not "authorize other modifications of a mortgage protected by § 1322(b)(2)."  *Id.* ¶ 5.  Furthermore, § 1322(d) of the Code provides that, under certain conditions, which are applicable here, "the plan may not provide for payments over a period that is longer than 5 years."  *See* ECF 1-2 at 1.

Debtor/Appellant also claims that the Bankruptcy Court misapplied § 1326 of the Code. ECF 18 at 7-10.  As noted, a Bankruptcy Court must confirm the plan before it becomes binding.

Section 1326(a) of the Bankruptcy Code governs payments to be made by the debtor before a Chapter 13 plan is confirmed.

Section 1326(a)(1)(A) of the Bankruptcy Code provides: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee."   According to Collier: "This general rule will result in most plan payments beginning 30 days after the filing of a chapter 13 case, or the conversion of a case to chapter 13."  8-1326 Collier ¶ 1326.02[1][a].

Under 11 U.S.C. § 1326(a)(3), bankruptcy courts may adjust the level of pre-confirmation payments.  The Code states: "[T]he court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan." 11 U.S.C. § 1326(a)(3).

Section 1326(c) of the Bankruptcy Code is also relevant.  It provides: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."  As the Bankruptcy Court noted in the Escrow Order, in this district, the default plan is for "'Pre-petition arrears on the . . . claims [to] be paid through equal monthly amounts under the plan while the Debtor maintains post-petition payments directly."  ECF 1-2 at 2 n. 2.  Notably, according to Lundin and Brown, § 147.1 ¶ 19: "When direct payment is a concealed effort to make no provision at all for the mortgage holder or to provide for the mortgage holder in a manner that is inconsistent with the conditions for confirmation, the courts have refused confirmation or dismissed the Chapter 13 case altogether."

## 2.      The Escrow Order

Howes's primary objection to the Escrow Order is that the Bankruptcy Court required him to pay a lump sum of $155,840 into escrow and an additional $4,870 per month, beyond the $5,980 per month already required under the plan.  *Id*.  According to Howes, "the other payments ordered by the trial judge (the $155,840 lump sum payment and an additional $4,870 monthly payment) . . . were not required by the Code and appear to have been ordered solely to ensure dismissal of this case."  *Id*.

With respect to the requirement that Howes continue to make monthly payments of $5,980, representing payments for his prepetition arrears, Howes asserts that he was in compliance with his obligation.  Noting that he "had paid a total of $105,764.00 to the Trustee" (ECF 18 at 10), Howes maintains that a debtor is only required to make up the arrearage during the pendency of the plan, and "this is exactly what Debtor was in the process of doing when this case was dismissed."  *Id*. at 9.  He cites the Bankruptcy Court's observation in the Escrow Order that Howes's payment of $5,980 was "a sum theoretically sufficient to pay the prepetition arrears . . . before the elapse of five years."  *Id*. at 9; *see* ECF 1-2 at 4.  The prepetition arrears is not in issue, however.

Howes provides several other reasons as to why he claims the additional requirements as to the lump sum payment and the additional monthly mortgage payments of $4,870 were an abuse of discretion.

First, Howes contends that "the Code only requires payments with respect to an 'allowed' secured claim, but Wells Fargo's claim was never allowed and its validity is currently on appeal in the Fourth Circuit."  *Id*.  According to Howes, *id*.: "No allowed secured claim was pending

before the bankruptcy court at the time of dismissal, and no compliant proof of claim had been filed."

Second, Howes claims that "none of the perceived delays of the proceedings, listed by the bankruptcy judge resulted from the actions of Debtor." ECF 18 at 11. According to Howes, "such delays resulted from Wells Fargo's filing a bogus initial proof of claim and then an equally bogus amended proof of claim containing the false statements . . . ." *Id.* Further, Howes states, *id.*: "The delays also resulted from the purported creditors' game of bait-and-switch, whereby they kept bringing new players into the case (Christiana Trust, Carrington, Selene) in an apparent effort to obscure the initial lack of evidence to file a compliant and non-frivolous proof of claim." *Id.*

Finally, Howes contends, *id.* at 14:

[I]t is surely not Debtor's fault that the appeal of the adversary complaint's dismissal took one year to decide in this Court. To be sure, Debtor does not fault this Court for doing so in the slightest, but takes issue with the bankruptcy judge's faulting Debtor for this perceived delay.

Howes concludes: "As can be seen, the bankruptcy judge is clearly grasping at straws here in an effort to find reasons to fault Debtor, again exhibiting a strong bias against Debtor and in favor of the purported creditors." *Id.*

At first blush, it may seem that the Escrow Order was draconian. But, I must conclude that the Bankruptcy Court did not err or abuse its discretion in issuing the Escrow Order.

At the plan confirmation hearing on November 18, 2015, it was apparent to Judge Gordon that, during the pendency of the Chapter 13 case, the Howes had failed to make thirty-one mortgage payments that had come due. ECF 1-2 at 7. Recognizing this failure, Judge Gordon notified Howes that he intended to issue the Escrow Order, requiring Howes, *inter alia*, to "deposit into an escrow account a sum sufficient ($150,970) to secure thirty-one (31) months

of unpaid postpetition mortgage payments" and requiring Howes to also "continue to deposit additional, 'current' monthly postpetition mortgage payments of $4,870 into the same postpetition escrow account." *Id.* at 5.   The Bankruptcy Court then gave Howes time to "convince the Court otherwise . . . ." *Id.*   Howes availed himself of that opportunity, attacking the proposed Escrow Order on two jurisdictional grounds and on the basis that no party requested the relief in the proposed Escrow Order.   ECF 191 in RAG-12-30614.   Notably, Howes did not oppose the proposed Escrow Order on the basis that he could not afford to make the payments.   *See id.*

In the Escrow Order, Judge Gordon responded to each of Howes's assertions, as set forth by Howes in his opposition to the proposal.   *See* ECF 191 in RAG-12-30614.   The Bankruptcy Court stated, ECF 1-2 at 6 in ELH-16-840:

> [The Escrow Order] will merely require the Debtor to behave in a manner consistent with the minimum standards of what any other debtor would be required to do in a Chapter 13 case. . . .   Once the AP reaches a final, non-appealable judgment, the funds held in escrow can immediately be paid to the proper lienholder to cure the massive, outstanding default.   In the wholly unlikely event it is somehow determined that the Debtor and his wife can keep their house free of any lien or obligation to pay (a contention that is not squarely raised by them), then the escrowed funds can be returned to the Debtor.

Further, the Bankruptcy Court stated: "To the extent the continuation of this case is dependent upon the Debtor's adherence to the conditions set forth herein and the protection of the putative lienholder's interest while the parties await the outcome of the appeal, this is only fitting." *Id.*

According to the Bankruptcy Court, the Escrow Order would protect Howes's creditors, because Howes had "largely evade[d] fundamental responsibilities that any other debtor would have to live up to in order to sustain a Chapter 13 case . . . ." ECF 1-2 at 2.   The Bankruptcy Court continued, *id.*:   "Those responsibilities include making: (a) regular plan payments to the

-26-

Trustee that are, at a minimum, sufficient to cure, within five years, the prepetition arrears owed

on the Debtor's residential home mortgage and (b) *ongoing, current postpetition payments* to the

lender who holds the home mortgage loan."  (Emphasis added.)

Even assuming that making ongoing mortgage payments were not *required* by the Code,

§ 105(a) of the Code confers discretion on the Bankruptcy Court to take action to protect

creditors, where necessary.  It is undisputed that Howes failed to make, as of the November 13,

2015 hearing, thirty-one monthly post-petition mortgage payments.  *See* ECF 18.  Judge Gordon

determined that the Debtor's failure to pay any post-petition mortgage payments amounted to an

evasion of "fundamental responsibilities that any other debtor would have to live up to in order

to sustain a Chapter 13 case," and constituted an abuse of process.  ECF 1-2 at 2-3, 6-7.  The

Bankruptcy Court then issued the Escrow Order in order to protect the creditors and to ensure

that Howes complied with his responsibilities.  Judge Gordon stated, *id.* at 7: "The express

language of 11 U.S.C. § 105(a) demands no less."

The Bankruptcy Court also complied with other sections of the Code in issuing its

Escrow Order.  Section 1326 (a)(3) states that "the court may, upon notice and a hearing, modify,

**increase**, or reduce the payments required under this subsection pending confirmation of a plan."

*Id.* (emphasis added).   And, § 1326(a)(1)(A) of the Code requires a debtor to make pre-

confirmation payments under the plan.

Howes disagrees that his pursuit of the adversary proceeding constituted an abuse of the

process or that he is the source of delay.   Further, Howes argues that additional payments

mandated by the Escrow Order were not "required" by the Bankruptcy Code.   In addition,

Howes suggests that he did not make the payments because he did not know the party "entitled

to enforce the Note."  *See* ECF 1 ¶ 58 in RAG-13-510.  This does not excuse his failure to make

post-petition mortgage payments, or to work with the Bankruptcy Court to determine a solution during the pendency of the adversary proceeding. Howes's failure to make mortgage payments continued both after the Bankruptcy Court dismissed his adversary proceeding and after this Court affirmed the dismissal. Yet, 11 U.S.C. § 1322(b)(5) plainly contemplates a debtor's ongoing mortgage payments during a Chapter 13 case. *See* Lundin and Brown § 129.1, at ¶ 4. This Howes failed to do, and the Escrow Order merely constituted an effort by the Bankruptcy Court to rectify Howes's dereliction.

The Bankruptcy Court was understandably frustrated by Howes's failure to abide by his responsibilities as a Chapter 13 debtor during the pendency of those proceedings. The Bankruptcy Court's Escrow Order struck the appropriate balance between the interests of the creditors and Howes's pursuit of the appeal as to the adversary proceeding, by mandating that the payments be made into an escrow account held by the Chapter 13 Trustee until the rightful creditor is determined. ECF 1-2 at 7.

In sum, the Bankruptcy Court did not err or abuse its discretion in issuing the Escrow Order. The Bankruptcy Court determined that the Escrow Order was necessary in order to protect the interests of the creditors, and it also took care to craft a solution that acknowledged the Debtor's contentions and concerns in the adversary proceeding. Moreover, the Bankruptcy Court gave the Debtor notice of its intention to issue the Escrow Order and gave the Debtor the opportunity to respond, as required by the Code, and provided reasoned responses to his contentions.

### 3. The Dismissal Order

Howes also argues that "[t]he March 4, 2016 Dismissal Order misapplies §1322 and 1326 of the Bankruptcy Code." ECF 18 at 7 (emphasis omitted). However, the arguments that follow

seem to attack the Escrow Order rather than the Dismissal Order.  *See id.* at 7-15.  I am satisfied that the Bankruptcy Court did not err or abuse its discretion in issuing the Dismissal Order.

As noted, the Bankruptcy Court ordered the Debtor to comply with several conditions, as enumerated in the Escrow Order.  *See* ECF 1-2 at 7-8.  Among other things, the Escrow Order required the Debtor to "deposit with the Trustee, to be held in escrow, $155,840 representing 32 months of delinquent unpaid postpetition mortgage payments" and further to "deposit an additional $4,870 representing current postpetition mortgage payments into such escrow account . . . ."  *Id.* at 7.  The Escrow Order also provided that if the Debtor failed to comply with the conditions of the Order, he "shall have five (5) days from the date of the notice to cure the missed payment."  *Id.* at 8.  Furthermore, the Escrow Order stated that "if the Debtor does not cure a default within five (5) days, or fails to make a payment more than twice, and the same is established by affidavit from the Trustee or Christiana, then this case shall be dismissed with prejudice for a period of twenty-four (24) months from the date of dismissal . . . ."  *Id.*

Howes does not dispute that he failed to make both the $155,840 one-time payment and the $4,870 monthly payment to the Trustee, as required by the Escrow Order.  *See* ECF 18.  Nor did Howes express an inability to pay.  And, he does not claim that he cured the deficiency within five days of the notice.  *See id.*

Accordingly, I am satisfied that the Bankruptcy Court did not err or abuse its discretion in dismissing the case, with prejudice, for twenty-four months after the Debtor failed to comply with the terms of the Escrow Order.[9]

---

[9] There is no challenge to the twenty-four month period.

### III.    Conclusion

For the reasons stated above, I shall AFFIRM the judgment of the Bankruptcy Court. Because the "Motion to Vacate or Stay Sua Sponte Orders Dismissing Case and Requiring Additional Escrow Payments to Trustee" (ECF 10) effectively requests that the Court address the merits of the appeal, I shall DENY that motion as moot.  And, I shall also DENY as moot Debtor/Appellant's "Unopposed Motion to Stay Briefing Schedule."  ECF 11.

An Order follows.


Date:  December 12, 2016                    _____/s/_____
                                           Ellen L. Hollander
                                           United States District Judge